UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
DURANT ROWE,                              :
                                          :
                    Plaintiff,            :
                                          :       **REPORT AND**
          -against-                       :       **RECOMMENDATION**
                                          :
CC RESTAURANT & BAKERY, INC. D/B/A        :       17-CV-01423 (CBA)(PK)
GOLDEN KRUST CARIBBEAN BAKERY             :
AND GRILL and KENNETH MOXEY,              :
                                          :
                    Defendants.           :
---------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Durant Rowe ("Plaintiff") brought this Motion for Default Judgment ("Motion")

against Defendants CC Restaurant & Bakery, Inc. d/b/a Golden Krust Caribbean Bakery and Grill

("Corporate Defendant") and Kenneth Moxey ("Individual Defendant" and, collectively with

Corporate Defendant, "Defendants"), seeking damages under the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") N.Y. Lab. Law §§ 650 *et*

*seq.* (*See* Motion, Dkt. 44; *see also* Am. Compl., Dkt. 14.)

The Honorable Carol Bagley Amon has referred the Motion to the undersigned for a Report

and Recommendation. (*See* Jan. 14, 2019 Order.) For the reasons stated herein, the undersigned

respectfully recommends that the Motion be granted and damages be awarded as detailed below.

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint, unless otherwise stated.

Corporate Defendant is a New York corporation operating a restaurant located at 200-08 Linden

Boulevard, St. Albans, New York 11412. (Am. Compl. ¶¶ 6, 7.) Individual Defendant is a resident

of New York. (*Id.* ¶ 8.) He "was and still is an officer of" Corporate Defendant. (*Id.* ¶ 9.)

Individual Defendant controlled Corporate Defendant's operations and business functions,

determined employee salaries, made hiring decisions, and determined wage and hour practices and polices. (*Id.* ¶ 9.)

Plaintiff worked for Defendants as a cook from May 6, 2012 until February 27, 2016. (Inquest Tr. ("Tr."), at 7, 9, Dkt. 49; *see also* Am. Compl. ¶ 5.) From May 6, 2012 until the end of January 2015, Plaintiff generally worked seven days per week, from 4:30 a.m. until 7:00 p.m., with no breaks. (Am. Compl. ¶ 12; Tr. at 8; Updated Damages Chart, Dkt. 48-1.) Thus, during this time, he worked a total of 101.5 hours per week, except during the week of October 12 to October 18, 2014, when he worked 58 hours. (Am. Compl. ¶ 13; Tr. at 26; Updated Damages Chart.) From February 1, 2015 until February 27, 2016, Plaintiff worked six days per week (Monday through Saturday), from 4:30 a.m. to 7:00 p.m., and every other Sunday from 4:30 a.m. to 7:00 p.m., with no breaks. (Am. Compl. ¶14; Tr. at 9-11; Updated Damages Chart.) Thus, during this period, he worked 87 hours per week when he worked Monday through Saturday, and 101.5 hours per week when he also worked on Sundays. (Am. Compl. ¶ 15; Tr. at 9-11; Updated Damages Chart.)

Defendants paid Plaintiff a flat rate of $700.00 per week.[1] (Tr. at 11; *see also* Tr., Pl. Ex. 1 ("Earnings Statements"); Mem. of Law at 6, Dkt. 44-1; Pl.'s Depo. at 50:11-20, Dkt. 44-11; Individual Def.'s Depo. at 210-7-22, Dkt. 44-13.) Plaintiff was paid via check on a weekly basis. (Am. Compl. ¶18.) He was not required to "clock in or out" of his shifts and Defendants did not record the hours that he worked. (*Id.* ¶¶ 19-20.)

Defendants failed to provide Plaintiff with written pay rate notices and accurate and complete wage payment statements. (Am. Compl. ¶¶ 24-25.)

---

[1] The Amended Complaint alleged that Defendants paid Plaintiff $720 per week (Am. Compl. ¶ 17), but Plaintiff's testimony at the deposition and at the inquest, as well as the earnings statements submitted during the inquest, show that Plaintiff was paid $700.

# PROCEDURAL BACKGROUND

On March 14, 2017, Plaintiff filed this FLSA and NYLL action against Defendants. (Compl., Dkt. 1.) Both Defendants were served on March 2017. (Dkts. 6, 13.) On May 10, 2017, Plaintiff filed an Amended Complaint. Defendants filed their Answer to the Amended Complaint and interposed three counterclaims that were later withdrawn by stipulation with Plaintiff.[2] (Answ., Dkt. 16.)

On April 13, 2018, the parties certified the close of discovery. (Dkt. 30.) During discovery, both Plaintiff and Individual Defendant were deposed. (Motion, Exs. H, J, Dkts. 44-11, 44-13.)

A pretrial conference was scheduled for June 27, 2018 to discuss trial preparations. (May 30, 2018 Order.) However, it was adjourned because, on June 25, 2018, Defendants' counsel filed a Motion to Withdraw. (Defs.' Counsel's Mot. to Withdraw, Dkt. 33; *see also* June 25, 2018 Order.) On July 6, 2018, the Court held a hearing during which the Motion to Withdraw was granted. (Jul. 6, 2018 Min. Entry.) Individual Defendant was present and advised by the Court that he could "proceed *pro se* on his own behalf, but that the corporate defendant cannot appear *pro se* in federal court." (*Id.*) The Court gave Defendants until August 6, 2018 to obtain new counsel. (*Id.*)

On August 14, 2018, the Court held a Status Conference at which Individual Defendant appeared, but no appearance was made on behalf of Corporate Defendant. (Aug. 14, 2018 Min. Entry.) Individual Defendant was once again reminded that Corporate Defendant "must be represented by counsel" and that "its continued nonappearance will put it at risk of being found in default." (*Id.*) On September 19, 2018, the Court held a Settlement Conference at which attorney Andrew P. Jones appeared on behalf of Defendants; he never filed a Notice of Appearance. (Sept. 19, 2018 Min. Entry.) The parties were unable to reach a settlement agreement. (*Id.*)

---

[2] The parties stipulated that Plaintiff would withdraw the seventh and eighth "claims of his Amended Complaint for retaliation pursuant to 29 U.S.C. § 215(a)(3) and NYLL § 215(a)(iii)" (Dkt. 20) and Defendants would withdraw their counterclaims (Dkt. 22).

On December 12, 2018, after the Court twice warned Defendants' attorney to file a Notice of Appearance, Judge Amon held a pre-trial conference at which only Plaintiff's counsel appeared. (Dec. 12, 2018 Min. Entry.) Judge Amon granted Plaintiff leave "to make any motion that it deems appropriate." (*Id.*)

On December 21, 2018, Plaintiff requested a Certificate of Default against Defendants, which the Clerk of Court entered on December 27, 2018. (Dkts. 40, 41.)

On January 4, 2019, Plaintiff filed the Motion seeking (1) unpaid overtime compensation pursuant to the FLSA and the NYLL; (2) wage notice statutory damages pursuant to NYLL Section 195(1); (3) wage statement statutory damages pursuant to NYLL Section 195(3); (4) liquidated damages pursuant to the NYLL; (5) pre-judgment interest on all state law claims; (6) post-judgment interest pursuant to 28 U.S.C. § 1961; and (7) an automatic fifteen percent increase to any damage award pursuant to the NYLL in the event Defendants fail to meet the deadlines for payments on a judgment awarded by the Court.[3] (Mem. of Law at 22-23; Damages Chart.) Additionally, Plaintiff requests leave to file a motion for attorneys' fees once the Motion is granted. (Mem. of Law at 22.)

On August 2, 2019, an inquest was held at which Plaintiff testified under oath about his damages. (Aug. 2, 2019 Min. Entry; *see also* Tr.) Upon the Court's direction, Plaintiff filed a supplemental letter regarding damages calculations. (Dkt. 48.)

## DISCUSSION

### I.  Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process regarding default judgments. Fed. R. Civ. P. 55. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114,

---

[3] Although alleged in the Amended Complaint, Plaintiff does not request compensation for unpaid minimum wages in his Motion. (Mem. of Law at 22-23; *see also* Tr. at 6.)

4

128 (2d Cir. 2011). First, the Clerk of the Court enters the party's default when a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Then, the plaintiff can apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). A motion for default judgment must include: "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civ. R. 55.2(b). The moving party then must mail all relevant papers against whom default judgment is sought and the proof of such mailing must also be filed with the court. Local Civ. R. 55.2(c).

A default "constitutes admission of all well-pleaded factual allegations in the complaint." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis Pawn Shop, LLC*, 645 F.3d at 125-26, 133; (2) plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established. *See GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208; *see also Mickalis Pawn Shop*, 656 F.3d at 129.

Although a party's default is deemed to be an admission of all well-pleaded allegations as to liability, "it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 155 (2d Cir. 1992). Plaintiff's allegations as to damages are not deemed true, and courts have "an obligation to ensure that damages are appropriate." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 151 (E.D.N.Y. June 20, 2013) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

"Where a party initially appears and answers, but subsequently fails to continue in the case, a default judgment can still issue" if the party fails to continue defending the case. *Mister Softee, Inc. v. Tsirkos*, No. 14 CV-1975 (LTS) (RLE), 2015 WL 7458619, at *3 (S.D.N.Y. Nov. 23, 2015); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013); *Mickalis Pawn Shop*, LLC, 645 F.3d at 129; *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305 (2d Cir. 1991) When that is the case, district courts should accept "as true all of the factual allegations in the complaint, except those relating to damages." *See, e.g., Eagle Assocs.*, 926 F.2d at 1305.

## II.  Jurisdictional and Procedural Requirements

This Court has original subject matter jurisdiction over this action because it arises under the FLSA, which is a federal statute. *See* 28 U.S.C. § 1331. It also has supplemental jurisdiction over the related NYLL claims. *See* 28 U.S.C. § 1367.

The Court has general jurisdiction over Corporate Defendant because it is a New York corporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). Personal jurisdiction over a New York corporation is established once it is validly served in this district. *See* Fed. R. Civ. P. 4(k)(1)(A). A corporation may be served by "following state law for serving a summons." Fed. R. Civ. P. 4(h)(1)(A). Service upon Corporate Defendant was made via the New York Secretary of State (Dkt. 13), which is a method of service authorized by New York state law. *See* N.Y. C.P.L.R. § 311(a)(1); N. Y. Bus. Corp. Law § 306(b)(1).

Because Individual Defendant is a resident of New York (Am. Compl. ¶ 8), he is subject to the Court's general jurisdiction. *See, e.g., Daimler AG*, 571 U.S. 117 at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") (quotations omitted). Individual Defendant was properly served at his place of business on March 25, 2017. (Dkt. 6.) *See* Fed. R. Civ. P. 4(e)(1); C.P.L.R. § 308(2).

Although Defendants answered and appeared, they stopped appearing and defending in this action. Thus, Plaintiff may request, and the Court may grant, default judgment against Defendants. *Mister Softee, Inc.,* 2015 WL 7458619, at *3.

Plaintiff has also demonstrated that he has taken the required steps under the Local Rules by requesting and obtaining a Certificate of Default (Dkts. 40, 41), making an application to the Court for default judgment (Dkt. 44), and filing proof that the motion papers were mailed to Defendants (Dkt. 44-3). *See* Local Civ. R. 55.2.

## III. FLSA Claims

### a. Liability

#### i. Employment Relationship Under the FLSA

To plead a cause of action under the FLSA, Plaintiffs must establish that: (1) defendant is an employer subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Saucedo v. On the Spot Audio Corp.,* No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted,* 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). A defendant is an FLSA employer if it meets the criteria for either enterprise or individual coverage. *See Saucedo*, 2016 WL 8376837, at *4. The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also*

*Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). The individual

coverage test considers the "employment actions of each" plaintiff to determine whether "the

employees themselves are 'engaged in commerce.'" *Saucedo*, 2016 WL 8376837, at *4. "Commerce"

is "trade, commerce, transportation, transmission, or communication among the several States or

between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may

meet this if "an enterprise employs workers who handle goods or materials that have moved or been

produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121

(E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Here, before Defendants stopped appearing and the Clerk of Court entered a default against

Defendants, the parties stipulated that Corporate Defendant was "'an enterprise engaged in

commerce or in the production of goods for commerce' within the meaning of the FLSA, and that

its gross annual volume of sales made or business done was not less than $500,000.00 each year."

(*See* Dkts. 26, 27.) Plaintiff also alleged that Corporate Defendant was an employer under the FLSA.

(Am. Compl. ¶¶ 40-42.) Generally, allegations describing statutory definitions may not be sufficient

to infer a nexus to interstate commerce without further proof. However, in the context of default,

the Court may accept these uncontested allegations as true and make reasonable inferences. *See, e.g.,*

*Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 121; *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-

1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012), *R&R adopted*, 2012 WL 909825

(E.D.N.Y. Mar. 16, 2012). Therefore, the record in this case is sufficient to establish Corporate

Defendants' employer status for the purpose of Plaintiff's Motion.

Moreover, Defendants may be held jointly and severally liable for FLSA violations because

Individual Defendant is an owner or operator of Corporate Defendant. (Am. Compl. ¶ 9.) *Mahoney*

*v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016),

*R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employee[s] who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

Plaintiff alleges that he was employed by Defendants as a cook. (Am. Compl. ¶¶ 5, 10-11.) In their Answer, Defendants admit that Plaintiff was "formerly employed … as the Chef. . . ." (Answ. ¶ 3.) Accepting the allegations set in forth in the Amended Complaint and admissions as true, Plaintiff falls within the FLSA's definition of "employee."

There is also an employer-employee relationship between Plaintiff and Individual Defendant under the Second Circuit's "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. The economic reality test considers whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). The Court must consider the "totality of the circumstances" and no one factor is dispositive. *Irizarry*, 722 F.3d at 110. The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotation marks omitted). Moreover, individuals who exercise "operational control over employees" can be held liable, "if [their] role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110.

Plaintiff alleges that Individual Defendant is an officer of Corporate Defendant who "exercised operational control, … controlled significant business functions, … determined employee salaries, made hiring decisions, and acted on behalf of [Corporate Defendant] in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees." (Am. Compl. ¶ 9.)  Accepting Plaintiff's allegations as true, Individual Defendant was Plaintiff's employer.

Finally, Plaintiff must show that he is not exempt from the FLSA's protections.  *Fermin*, 93 F. Supp. 3d at 32.  The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), but they do not include functions such as cooks.  *See* 29 U.S.C. § 213. Specifically, Plaintiff was not "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), defined as one "whose primary duty is management of the enterprise, … and who has the authority to hire or fire other employees…."  *See* 29 C.F.R. § 541.100.  Plaintiff's responsibilities included "prepping food, cooking, and cleaning."  (Am. Compl. ¶ 11.)  Plaintiff alleged that none of these exemptions apply to him.  (*Id.* ¶¶ 46, 47.)  In addition, at his deposition, he testified that he was not in charge of inventory or supervising other short order cooks.  (*See* Motion, Ex. H at 44:9-17, 54:8-57:5.)  Accordingly, Plaintiff is a non-exempt employee under the FLSA.

Plaintiff has shown that the FLSA applies here.

ii.     Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment."  N.Y. Lab. L. § 190.  Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations.  *Saucedo*, 2016 WL 8376837, at *6.  Otherwise, the NYLL's

definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney*, 2016 WL 6585810, at *9 (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Because Plaintiff had an employer-employee relationship with Defendants under the FLSA, he also had an employer-employee relationship under the NYLL.

Plaintiff has shown that the NYLL applies.

iii.     Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiff filed the Complaint on March 14, 2017. Therefore, he may recover for FLSA violations that occurred on or after March 14, 2014.

Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Therefore, Plaintiff may recover for NYLL violations that occurred during the entirety of his employment with Defendants—from May 2012 through the end of February 2016.

b.     Plaintiff's Particular Claims and Damages

Plaintiff seeks (1) $298,450.21 for unpaid overtime compensation pursuant to the FLSA and the NYLL; (2) $5,000.00 for wage notice statutory damages pursuant to NYLL Section 195(1); (3)

$5,000.00 for wage statement statutory damages pursuant to NYLL Section 195(3); (4) $298,450.21 in liquidated damages pursuant to the NYLL; (5) $127,863.43 in pre-judgment interest;[4] (6) post-judgment interest pursuant to 28 U.S.C. § 1961; and (7) an automatic fifteen percent increase to any damage award pursuant to the NYLL in the event Defendants fail to meet the deadlines for payments on a judgment awarded by the Court.  (Mem. of Law at 22-23; *see also* Proposed Order, Dkt. 44-16; Dkt. 48-1.)  Defendants are jointly and severally liable under the FLSA and NYLL for any damages award in favor of Plaintiff.

Plaintiff's allegations as to damages are not deemed true, and courts have "an obligation to ensure that damages are appropriate." *Stark Carpet Corp.,* 954 F. Supp. 2d at 151 (quoting *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111.

"An employee bringing an action for unpaid wages under the FLSA or the NYLL has the burden of proving that the defendant did not adequately compensate the employee." *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *3 (E.D.N.Y. Oct. 2, 2014).  Under both federal and state law, an employer must "make, keep, and preserve" records of its employees' wages and employment conditions. 29 U.S.C. § 211(c); *see* N.Y. Lab. Law, § 196–a(a). "However, if an employer fails to keep or produce records, the plaintiff may satisfy [his or] her burden by producing sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference." *Carrasco–Flores*, 2014 WL 4954629, at *3; *see also Avelar v. Ed Quiros, Inc.*, No. 13-CV-7017 (ADS) (AYS), 2015 WL 1247102, at *8 (E.D.N. Y. Mar. 18, 2015).

Plaintiff has submitted a memorandum of law supporting the relief sought and a statement of damages in the form of a detailed chart specifying the amounts for each alleged violation.  (*See*

---

[4] Plaintiff later filed a supplemental letter providing updated pre-judgment interest calculations, totaling $143,832.56.  (Dkt. 48-1.)

Motion, Ex. I, Dkt. 44-12.)  Plaintiff also submitted transcripts of his own deposition (Motion, Ex. H) and that of Individual Defendant (Motion, Ex. J).  Additionally, the Court held an inquest at which Plaintiff testified under oath about his damages, and Plaintiff submitted a chart with updated damages calculations.  (Aug. 2, 2019 Min. Entry; *see also* Dkt. 48-1.)

        i.    <u>Overtime Wages</u>

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* N.Y. Lab. Law §§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.2).  To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201.  *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Even though the FLSA and the NYLL state that "overtime wages are to be paid at the rate of one and one-half times the regular rate of pay received by an employee, the regulations promulgated pursuant to the two statutes differ with respect to the determination of the 'regular rate of pay' when an employee receives a weekly salary." *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016).  Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the salary by the number of hours which the salary is intended to compensate." *Id.* (quoting 29 C.F.R. § 778.113 (2016)).  While "there is a rebuttable presumption that a weekly salary covers 40 hours[,] the employer can rebut the presumption by showing an

employer-employee agreement that the salary cover a different number of hours." *Id.* (quotations omitted).

By contrast, the Hospitality Industry Wage Order ("Hospitality Order"), promulgated pursuant to the NYLL, states that "when an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(b); *see also Jianmin Jin & Chunyou Xie v. Shanghai Original, Inc. et al.*, No. 16CV5633 (ARR) (JO), 2019 WL 3244187, at *4 (E.D.N.Y. July 19, 2019); *Romero v. Rung Charoen Sub, Inc.*, No. 16 CIV. 1239 (VMS), 2017 WL 4480758, at *10 (E.D.N.Y. Sept. 30, 2017). Unlike the FLSA and those NYLL provisions covering the non-hospitality industry, the Hospitality Order contains no mechanism for rebutting the calculation based on a maximum 40-hour work week with evidence that the employee had an agreement with the employer to work more than 40 hours a week. As a restaurant worker, Plaintiff indisputably worked in the hospitality industry, so his hourly rate of pay is calculated by dividing his weekly salary by 40, based purely on the fact that 40 is less than the 101.5 or 87 or 58 hours a week he testified that he agreed to and actually did work. (Tr. at 17-18.) Accordingly, his regular rate of pay is calculated by dividing the $700 he was paid each week by 40 hours, which results in an hourly rate of $17.50. Because Plaintiff's regular rate is higher than the NYLL minimum wage, he is entitled to one and one-half times his actual hourly rates, for an overtime rate of $26.25 per hour.

In light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), Plaintiff is entitled to recovery based on NYLL provisions rather than the FLSA.

From May 6, 2012 until the end of January 2015, Plaintiff generally worked seven days per week, from 4:30 a.m. until 7:00 p.m., with no breaks. (Am. Compl. ¶ 12; Tr. at 8-9; Updated Damages Chart.) Thus, during this time, he worked 14.5 hours per day, for a total of 101.5 hours per week, except during the week from October 12 to October 18, 2014, when he worked 58 hours. (Am. Compl. ¶ 13; Tr. at 26; Updated Damages Chart.) From February 1, 2015 until February 27, 2016, Plaintiff worked six days per week (Monday through Saturday), from 4:30 a.m. to 7:00 p.m., and every other Sunday from 4:30 a.m. to 7:00 p.m., with no breaks. (Am. Compl. ¶14; Tr. at 9-11.) Thus, during this period, he worked 87 hours per week when he worked Monday through Saturday, and 101.5 hours per week when he also worked on Sundays. (Am. Compl. ¶ 15; Tr. at 9-11; Updated Damages Chart.)

Based on these calculations, Plaintiff is owed overtime wages for the amounts described in the following chart:

| Chart 1: Plaintiff's Overtime Calculations | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Work Period | Hours Worked Each Week | Overtime Hours Worked Each Week | Regular Rate | Overtime Rate | Weekly Overtime Wage Entitled[5] | Number of Weeks in Work Period | Unpaid Overtime in Work Period |
| 2012 | 5/6/2012-12/29/2012 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 34 | $54,888.92 |
| 2013 | 12/30/2012-12/28/2013 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 52 | $83,947.76 |
| 2014 | 12/29/2013-10/11/2014 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 41 | $66,189.58 |
| | 10/12/2014-10/18/2014 | 58 | 18 | $17.50 | $26.25 | $472.50 | 1 | $472.50 |
| | 10/19/2014-12/27/2014 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 10 | $16,143.80 |
| 2015 | 12/28/2014-1/31/2015 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 5 | $8,071.90 |
| | 2/1/2015-4/4/2015 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 4 | $6,457.52 |
| | | 87 | 47 | $17.50 | $26.25 | $1,233.75 | 5 | $6,168.75 |

[5] Overtime Hours Worked Each Week x Overtime Rate = Weekly Overtime Wage Entitled

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 4/26/2015-12/26/2015 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 17 | $27,444.46 |
| | | 87 | 47 | $17.50 | $26.25 | $1,233.75 | 18 | $22,207.50 |
| **2016** | 12/27/2015-2/27/2016 | 101.50 | 61.50 | $17.50 | $26.25 | $1,614.38 | 4 | $6,457.52 |
| | | 87 | 47 | $17.50 | $26.25 | $1,233.75 | 5 | $6,168.75 |
| **Total** | | | | | | | | **$304,618.96[6]** |

Accordingly, the undersigned recommends that Plaintiff be awarded **$304,618.96** for unpaid overtime compensation.

  ii. <u>Wage Notice Violations</u>

Plaintiff alleges violations of Sections 195(1) and 195(3), the statute's wage notice and statement provisions. (Am. Compl. ¶¶ 71-78.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule. Effective April 9, 2011, violations carried damages of $50 per workweek, for a maximum of $2,500. N.Y. Lab. L. § 198(1-b). After February 27, 2015, violations of Section 195(1) carry damages of $50 per workday, for a maximum of $5,000. N.Y. Lab. L. § 198(1-b).

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. Effective April 9, 2011, violations carried damages of $100 per workweek, for a maximum of $2,500. N.Y. Lab. L. § 198(1-d). After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, for a maximum of $5,000. N.Y. Lab. L. § 198 (1-d).

---

[6] Plaintiff's Damages Chart indicates that the total overtime owed is $298,450.21. However, it appears that Plaintiff's final calculations omitted the amount owed for the five weeks that Plaintiff worked Monday through Saturday for the period from December 27, 2015 to February 27, 2016.

Here, Plaintiff alleges that he never received wage notice or statements from Defendants at any point throughout the course of his employment. (Am. Compl. ¶¶ 24-26.) Individual Defendant admitted this fact in his deposition testimony. (*See* Ind. Def.'s Depo., Motion, Ex. J at 147:21-148:11.) The Earnings Statements submitted by Plaintiff during the inquest also show that the hours worked and rate of pay are not listed. (*See* Earnings Statements.) Because Plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days after February 27, 2015 (when the amendment to Section 195(3) came into effect), he is entitled to recover the maximum statutory damages of $5,000 under Section 195(1) and $5,000 under Section 195(3). *See, e.g., Jianmin Jin & Chunyou Xie, Plaintiffs,* 2019 WL 3244187, at *5 (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days after February 27, 2015).

Accordingly, the undersigned recommends that Plaintiff be awarded the **$10,000 in statutory damages** for wage statement and notice violations**.**

### iii.    Liquidated Damages

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663. If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Plaintiff sufficiently requested liquidated damages in the Amended Complaint. (Am. Compl. at 14, ¶ D.)

Additionally, the Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017). In light of the principle that "the

law providing the greatest recovery will govern," *Charvac*, 2015 WL 5475531, at *4, Plaintiff requests that he be awarded under the NYLL for unpaid overtime compensation because it results in the higher award and greatest relief. (Mem. of Law at 20.)

Plaintiff's claims arose after amendment of the NYLL in 2011, and he can recover "one hundred percent of the total amount of wages found to be due" unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a). Under the NYLL, Plaintiff may recover damages equal to 100% of the total unpaid wages owed. *Id.* Plaintiff alleges that Defendants' violations were knowing and willful. (Am. Compl. ¶¶ 48, 49, 57, 62, 69, 73, 76.) By defaulting, Defendants are unable to present evidence of good faith.

Accordingly, Plaintiff is entitled to an award of **$304,618.96** in liquidated damages.

    iv.    <u>Pre-Judgment Interest</u>

Plaintiff seeks "pre[-]judgment interest provided by NYLL." (Am. Compl. at 14, ¶ C.) Since "liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Saucedo*, 2016 WL 8376837, at *16. The statutory interest rate for pre-judgment interest is nine percent per annum. N.Y. C.P.L.R. § 5004. Courts have discretion in determining a reasonable date from which to award pre-judgment interest, such as the "earliest ascertainable date the cause of action existed" or a midway point between when the plaintiff began and ended work if damages were incurred at various times. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Because Plaintiff was denied wages over an extended period of time, the undersigned will use an intermediate date. The midpoint between May 6, 2012 and February 27, 2016 is April 2, 2014 and there are 697 days between this midpoint and the end of his employment. The undersigned multiplied **$304,618.96** (for unpaid overtime wages) by the 9% interest rate to get interest due of

$27,415.70 per year. That amount divided by 365 days in a year equal $75.11 in interest per day. That amount multiplied by the 697 days between the midpoint of Plaintiff's employment and the end of his employment equals $52,351.67.

Accordingly, the undersigned recommends that Plaintiff be awarded **pre-judgment interest of $52,351.67, plus $75.11 per day between February 28, 2016 and the date of entry of judgment**.[7]

v.      <u>Post-Judgment Interest</u>

Plaintiff also seeks post-judgment interest, (Am. Compl. at 14) which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, Plaintiff is entitled to post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

vi.      <u>15% Increase Penalty if Damages Not Paid Within Ninety Days</u>

New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4) (McKinney); *see also Rodriguez v. Solares Corp.,* No. 16CV3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, No. 16CV3922 (CBA) (SMG), 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). Accordingly, if Defendants fail to satisfy the judgment within the stated deadlines, then Plaintiff is entitled to a fifteen percent increase in the amount of damages owed to him.

---

[7] The recommended award is different from that requested by Plaintiff because Plaintiff incorrectly calculated the overtime wages (*see* note 6), and because Plaintiff calculated pre-judgment interest until August 9, 2019 (Dkt. 48 at 4; Updated Damages Chart).

        vii.     <u>Attorneys' Fees</u>

Plaintiff requests leave to file a motion for attorneys' fees to the Court upon granting of the Motion.  (Mem. of Law at 22.)  The undersigned recommends that this request be granted.

## **CONCLUSION**

Based on the foregoing, the undersigned recommends that a default judgment be entered against Defendants, finding them jointly and severally liable, and that Plaintiff be awarded the following damages:

(i)        **$304,618.96** in unpaid overtime wages;

(ii)       **$5,000** in statutory damages for the NYLL wage notice claim;

(iii)     **$5,000** in statutory damages for the NYLL wage statement claim;

(iv)     **$304,618.96** in liquidated damages;

(v)      **$52,351.67** in pre-judgment interest, plus **$75.11** per day between February 28, 2016 and the date of entry of judgment;

(vi)     Post-judgment interest as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied; and

(vii)    A 15% increase to any damage award, pursuant to N.Y. Lab. Law § 198(4) (McKinney).

Additionally, the undersigned recommends that Plaintiff be granted leave to file a motion for attorneys' fees.

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by August 19, 2019.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District

Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
              August 15, 2019